UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

MARIUS LISTHROP a/k/a SCARLXRD,

     Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

     Defendants.

_____/

## **COMPLAINT**

Plaintiff MARIUS LISTHROP a/k/a Scarlxrd ("Listhrop," "Scarlxrd," or "Plaintiff"), by and through undersigned counsel, hereby sues Defendants, the Individuals, Partnerships, and Unincorporated Associations identified in the caption, which are set forth on Schedule "A" hereto (collectively, the "Defendants"), and alleges as follows:

### **NATURE OF THE ACTION**

1.    Defendants are promoting, selling, reproducing, offering for sale, and distributing goods using counterfeits and confusingly similar imitations of Listhrop's trademarks within this district through various Internet based e-commerce stores and fully interactive commercial Internet websites operating under the seller identification names set forth on Schedule "A" hereto (the "Seller IDs").

2.    Like many other famous trademark owners, Plaintiff suffers ongoing daily and sustained violations of his trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin

purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits.  The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's trademarks, as well as the destruction of the legitimate market sector in which it operates.

3.     In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, Plaintiff has expended significant amounts of resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement.  The exponential growth of counterfeiting over the Internet, particularly through online marketplace platforms, has created an environment that requires companies, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and himself from the negative effects of confusion and the erosion of the goodwill connected to Plaintiff's brand.

## JURISDICTION AND VENUE

4.     This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement, false designation of origin under the Lanham Act, common law unfair competition; common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d), and The All Writs Act, 28 U.S.C. § 1651(a); 15 U.S.C. § 1051 *et seq*.

5.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1114 and 1125(a), 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

6.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, because the claims are so related to the trademark claims in this action, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

7.     Defendants are subject to personal jurisdiction in this District because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this District through at least the Internet based e-commerce stores and fully interactive commercial Internet websites accessible in Florida and operating under the Seller IDs.  Upon information and belief, Defendants infringe Plaintiff's trademarks in this District by advertising, using, selling, promoting and distributing counterfeit trademark goods through such Internet based e-commerce stores and fully interactive commercial Internet websites.

8.     Venue is proper in this District pursuant 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this District by advertising, offering to sell, selling and/or shipping infringing products into this District.  Defendants may be found in this District, as they are subject to personal jurisdiction herein.

## THE PLAINTIFF

9.     Plaintiff Marius Listhrop is an invidiual residing in Stratford Upon Avon, United Kingdom.

10.     Listhrop is the owner of all rights, title, and interest in the mark "Scarlxrd" (the "Scarlxrd Mark").

11.     Listhrop is a British rapper, singer and songwriter. He spent his early years posting humorous and lighthearted videos online, but turned toward powerful, distorted vocals and demonic instrumentals when he began rapping in 2015. His prolific output and shocking image skyrocketed singles like "Heart Attack," and "Chain$aw" into platinum status. He is known for his unique musical style combining elements of trap music and heavy metal. Formerly

3

a YouTube vlogger and personality known as Mazzi Maz, Scarlxrd began a career in music as the vocalist for nu metal band Myth City, before debuting as a rapper under his Scarlxrd moniker.

12.     He rose to prominence after the music video for his single "Heart Attack" gained significant attention, holding over 81 million views on YouTube as of September 2020. He has since released other successful songs, namely "King, Scar", "6 Feet", "Berzerk", and "Head Gxne".

13.     In August 2016, Scarlxrd debuted his new moniker with the release of "Girlfriend". By the end of 2016, he released two albums, his self-titled album (stylised in Japanese characters as スカー藩主) and *Rxse*. After the release of two more albums, *Cabin Fever* and *Chaxsthexry*, in April 2017, Scarlxrd released the video for "Chain$aw" on May 31st; a week later, he released the music video for "King, Scar". The following month, he published the music video for "Heart Attack" and the video quickly gained popularity. On September 29, 2017, he released his fifth studio album *Lxrdszn*. "King, Scar" was also released as a music kit in Counter-Strike: Global Offensive.

14.     The next year Scarlxrd performed at the 2018 Reading and Leeds Festivals. He later revealed that he would be featured on Carnage's second studio album, *Battered Bruised & Bloody*, which was released on April13, 2018.  Scarlxrd performed on the popular song "Up Nxw". Within a few weeks, he released his sixth studio album and major label debut *Dxxm* via Island Records.

15.     After releasing singles from mid-2018 to early-2019 in anticipation of an upcoming album, including "Hxw They Judge", "Berzerk", "Sx Sad", and "Head Gxne", Scarlxrd announced his seventh studio album, *Infinity*, which was released on March 15, 2019. Scarlxrd was thereafter nominated for Best British Breakthrough in the Kerrang! Awards.  Later that year, "The Purge" was featured on the first season of the HBO television series *Euphoria*. Before year's end, Scarlxrd

released two more studio albums. On December 19th, "I Can Dx What I Want" was announced as the official theme song for the WWE NXT UK event, NXT UK TakeOver: Blackpool II.

16.     Earlier this year, on January 14, 2021, Scarlxrd released "Let the Wxrld Burn" via his independent label Lxrd Records, marking his first release since his departure from Island Records. A few weeks later, on February 5, 2021, Scarlxrd released his 12th studio album *Dxxm II*, a sequel to his 2018 project *Dxxm*.

17.     Scarlxrd is an edgy rap-metal renegade musician with a unique brand of abrasive, atonal, screamed vocals, trap beats and ear-shredding bursts of distorted guitar, best known for his surgical mask and militaristic, anime-inspired style.

18.     Goods bearing and reproducing the Scarlxrd Mark are sold through authorized retailers throughout the United States, including within the State of Florida and this District. Genuine and authorized products bearing and reproducing the Scarlxrd Mark are widely legitimately advertised, promoted, and distributed by and through Listhrop and his authorized partners, including but not limited to the "Scarlxrd Official Store" at https://www.scarlxrdofficial.com/.  Over the course of the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasingly important to Listhrop's overall marketing and consumer education efforts. Thus, Listhrop expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.  Those strategies allow Listhrop and his authorized partners to educate consumers fairly and legitimately about the value associated with the Scarlxrd brand.

## THE DEFENDANTS

19.     Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants target their business activities towards consumers throughout the United States, including within this district through the operation of Internet based e-commerce stores via Internet marketplace websites under the Seller IDs.

20.     Defendants are the past and present controlling forces behind the sale of products under counterfeits and infringements of Plaintiff's trademarks as described herein using at least the Seller IDs.

21.     Upon information and belief, Defendants directly engage in unfair competition by advertising, offering for sale, and selling goods bearing one or more of Plaintiff's trademarks to consumers within the United States and this District through Internet based e-commerce stores using, at least, the Seller IDs and additional seller identification aliases and domain names not yet known to Plaintiff.  Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

22.     Defendants have registered, established or purchased, and maintained their Seller IDs.  Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs.

23.     Upon information and belief, some Defendants have registered and/or maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

24.     Upon information and belief, Defendants will continue to register or acquire new seller identification aliases and domain names for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations of one or more of Plaintiff's trademarks unless preliminarily and permanently enjoined.

25.     Defendants use their Internet-based businesses in order to infringe the intellectual property rights of Plaintiff.

26.     Defendants' business names, *i.e.*, the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of counterfeit and infringing goods bearing one or more of Plaintiff's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.  Moreover, Defendants are using Plaintiff's famous trademarks to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## GENERAL FACTUAL ALLEGATIONS

### *Listhrop's Intellectual Property Rights*

27.     Plaintiff is the owner of the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Scarlxrd Mark"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|-----------|--------------------|-------------------|---------------|
| SCARLXRD  | 5,712,275          | 04/02/2019        |               |

| | | | IC 009: Sound recordings featuring music; musical recordings; video recordings featuring music, and musical performances; tapes, namely, audio tapes featuring music; cassettes, namely, audio cassettes featuring music; CDs, namely, pre-recorded CDs featuring music; compact discs, namely, pre-recorded compact discs featuring music; films in the nature of motion picture films about music and musical bands; video cassettes, namely, prerecorded video cassettes featuring music; video recorders; CD ROMS, namely, prerecorded CD ROMS featuring music; video game software; computer game software; video cameras; cameras; spectacles, spectacle cases, sunglasses; mouse pads; screen savers in the nature of computer screen saver software; downloadable publications, namely, magazines in the field of music in electronic form, typically supplied on-line from databases or from facilities provided on the Internet; DVDs, namely, pre-recorded DVDs featuring music; headphones; stereo headphones; audiospeakers; downloadable digital music files; digital music downloadable from the Internet; downloadable music files; musical video recordings; downloadable musical sound recordings; musical recordings on compact discs; digital music downloadable in MP3 files provided from MP3 internet web sites; streamable sound recordings featuring music; streamable, downloadable videos featuring music and musical performances and downloadable electronic publication, namely, magazine featuring information about music and the |
|---|---|---|---|

|  |  |  | music industry; computer application software for mobile phones, portable media players, handheld computers, namely, software for streaming or playing music; downloadable music sound recordings; downloadable video recordings featuring music and musical performances; software for displaying emoticons; downloadable telephone ring tones for mobile phones; mobile phone covers and cases; decorative magnets; fridge magnets<br><br>IC 014: Jewelry; watches; costume jewelry; brooches; cufflinks; tie pins; tie clips; earrings; key rings; pendants; horological and chronometric instruments including watches and clocks; decorative key fobs; lapel pins; rings; cuff links; bracelets; bracelets made of leather; bracelets made of metal; bracelets of precious metal; cuff links made of precious metals with semi-precious stones; bracelets made of precious metals with semi-precious stones; bracelets with semi-precious stones; bracelets with metal; jewelry chains; necklaces; jewelry rolls for travel<br><br>IC 016: Printed matter, namely, paper signs, books, magazines, newsletters, informational cards and brochures in the field of music, magazines in the field of music, coffee table books in the field of music; photographs, pictures, prints; posters; greeting cards; postcards; notepads; address books; scrapbooks; folders; calendars; photograph albums; diaries; stamp albums; stickers; car stickers; decalcomanias; stationery; pens; pencils; erasers; pencil sharpeners; |
|---|---|---|---|

|  |  |  | pencil cases; drawing and drafting rulers; boxes for pens; book markers; gift bags; envelopes song books; printed sheet music; check book holders; book marks; paper bags

IC 018: Luggage; suitcases; luggage tags; overnight bags; weekend bags; suit bags; tote bags; briefcases; canvas shopping bags; trunks; travel cases; backpacks; baby carriers worn on the body; handbags; purses; wallets; sports bags; gym bags; leather bags; beach bags; casual bags in the nature of weekend bags, travel bags, clutch bags; cosmetic bags sold empty; make up bags sold empty; hip bags; drawstring pouches; rucksacks; satchels; school bags; shoe bags for travel; shoulder bags; sling bags; toiletry bags sold empty; travelling bags; bumbags; music cases; beauty cases sold empty; carriers for suits, for shirts and for dresses; tie cases; credit card cases and holders; business card cases; umbrellas; umbrella covers; parasols and walking sticks; whips; harness and saddlery; toweling bags; haversacks; bags for campers in the nature of all-purpose carrying bags; furskins; collars for animals; covers for animals; boxes of leather or leather board; attaché cases; canes; leather shoulder bags; valises; vanity cases sold empty; portfolios; key bags

IC 025: Clothing, namely, shirts, T-shirts, hoodies, sweatshirts, trousers, jogging suits, jeans, shorts, sports shorts, swimwear, beachwear, bikinis, swimming costumes, underwear, lingerie, boxer shorts, teddies being underclothing, slips |
|---|---|---|---|

being underclothing, camisoles, chemises, negligees, sleepwear, robes, pajamas, pajama sets, tracksuits, articles of outerwear, namely, coats, hats, gloves, jackets, jumpers and cardigans, pullovers, twin sets, knitwear, namely, tops and bottoms, leggings, neckties, waistcoats; Clothing, namely, headbands and wristbands as clothing, skirts, wraps as clothing, jerseys, blouses, dresses, sweatshirts, stockings, ties as clothing, shawls, blazers, overalls, halter tops, tank tops, crop tops, dresses, blazers, blouses, slacks, suits, vests, socks and hosiery, stockings, aprons, footwear, namely, boots, shoes, slippers, sandals, trainers in the nature of training shoes, booties, workout shoes and running shoes, beach shoes, soles for footwear; headwear, namely, headbands, hats, caps, berets, earmuffs, top hats, visors, baseball caps, beanies; swimwear; waterproof clothing, namely, tops, bottoms, and waterproof footwear and headwear; leather belts

IC 028: Games and playthings, namely, plush toys; playing cards; decorations for Christmas trees; children's toy bicycles; arcade games; balls for games; bath toys; beach balls; bean bags; board games; cuddly toys, namely, stuffed dolls and animals; soft toys in the nature of soft sculpture toys; stuffed toys; puppets; plush toys, jigsaw puzzles; manipulative puzzles; card games; computer games in the nature of battery-powered computer game with LCD screen; games

| | | | adapted for use with television receivers |
|---|---|---|---|
| | | | IC 041: Entertainment services in the nature of live musical group; sound recording and video entertainment services, namely, musical compositions for others and production of sound and music video recordings; concert and musical performances, namely, live music concerts; television and radio entertainment services, namely, ongoing television programs in the field of music and radio programs featuring performances by a musicians; entertainment services, namely, entertainment in the nature of live stage performances in the nature of concerts in the field of music by an individual and cabarets; production of music video and sound recordings; presentation, production and performance of live musical shows, live concerts, ongoing radio and television programs in the field of music, and multimedia entertainment services in the nature of production and post-production services in the fields of music, video, and films; recording, film, video and television studio services; audio, film, video and television recording services; music publishing; sound recording studios, production and distribution of films and videos in the field of music; publication of books, magazines and other texts; providing on-line music, not downloadable; on-line prerecorded digital music not downloadable provided from mp3 web sites on the internet; entertainment services, namely, providing non-downloadable prerecorded music, information in |

| | | | the field of music, and commentary articles about music, all on-line via a global computer network |
|---|---|---|---|

The foregoing registration for the Scarlxrd Mark constitutes presumptive evidence of its ownership and validity.  A true and correct copy of the federal registration for the Scarlxrd Mark is attached hereto as **Exhibit 1.**

29.     The Scarlxrd Mark is used in connection with the design, marketing, and distribution of high-quality goods in at least the category identified above.

30.     Long before Defendants began their infringing activities complained of herein, the Scarlxrd Mark has been used by Plaintiff in interstate commerce to identify and distinguish Mr.Listhrop's career and associated merchandise for an extended period.

31.     The Scarlxrd Mark is well-known and famous and has been for many years. Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Scarlxrd Mark and products bearing the Scarlxrd Mark.  The Scarlxrd Mark qualifies as a famous mark as that term is used in 15 U.S.C. §1125(c)(1).

32.     Plaintiff has extensively used, advertised, and promoted the Scarlxrd Mark in the United States in association with his merchandise.

33.     As a result of Plaintiff's efforts, members of the consuming public readily identify products and merchandise bearing or sold under the Scarlxrd Mark as being high quality goods sponsored and approved by Plaintiff.

34.     The Scarlxrd Mark serves as a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

### *Defendants' Counterfeiting and Infringing Conduct*

35.     Upon information and belief, Defendants are promoting and advertising, distributing, selling, and/or offering for sale counterfeit and infringing goods in interstate commerce using exact copies and confusingly similar copies of the Scarlxrd Mark through at least the Internet based e-commerce stores operating under the Seller IDs (collectively, the "Counterfeit Goods").  Plaintiff has used the Scarlxrd Mark extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

36.     Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially and materially different than that of Plaintiff's genuine goods.  Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff under the Scarlxrd Mark despite Defendants' knowledge that they are without authority to use the Scarlxrd Mark.  The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff.

37.     Defendants advertise their Counterfeit Goods for sale to the consuming public via e-commerce stores on Internet marketplace websites using at least the Seller IDs.  In so advertising these goods, Defendants improperly and unlawfully use the Scarlxrd Mark without Plaintiff's permission.

38.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements

14

of the Scarlxrd Mark. Specifically, Defendants are using counterfeits and infringements of Plaintiff's famous Scarlxrd Mark in order to make their e-commerce stores and websites selling illegal goods appear more relevant, authentic, and attractive to consumers searching for Plaintiff's related goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the goodwill associated with the Scarlxrd Mark, and/or (iii) increasing Plaintiff's overall cost to market the Scarlxrd Mark and educate consumers about his brand via the Internet.

39.     Upon information and belief, Defendants are concurrently targeting their counterfeiting and infringing activities toward consumers and causing harm within this District and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

40.     Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Scarlxrd Mark, including his exclusive right to use and license such intellectual property and the goodwill associated therewith.

41.     Defendants' use of the Scarlxrd Mark, including the promotion and advertisement, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

42.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to

Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

43.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

44.     Upon information and belief, Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their Seller IDs and any other alias seller identification names being used and/or controlled by them.

45.     Further, upon information and belief, Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Plaintiff.

46.     Plaintiff has no adequate remedy at law.

47.     Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Scarlxrd Mark.

48.     The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

### COUNT I -- TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

49.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 48 as though fully set forth herein.

50.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Scarlxrd Mark in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

51.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods, using counterfeits and/or infringements of the Scarlxrd Mark.  Defendants are continuously infringing and inducing others to infringe the Scarlxrd Mark by using one or more of them to advertise, promote, offer to sell, and/or sell at least counterfeit and infringing goods.

52.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

53.     Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable damage to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

54.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the Scarlxrd Mark in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

55.     Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined.  Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II -- FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(A) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

56.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 48 as though fully set forth herein.

57.     Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of the Scarlxrd Mark have been widely advertised and offered for sale throughout the United States via the Internet.

58.     Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of the Scarlxrd Mark are virtually identical in appearance to Plaintiff's genuine goods.  However, Defendants' Counterfeit Goods are different in quality.  Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

59.     Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

60.     Defendants have authorized infringing uses of the Scarlxrd Mark in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.  Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

61.     Additionally, Defendants are using counterfeits and infringements of the Scarlxrd Mark in order to unfairly compete with Plaintiff and others for space within search engine organic results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the World Wide Web.

62.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

63.     Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to his goodwill and business reputation, as well as monetary damages.

## COUNT III -- COMMON LAW UNFAIR COMPETITION

64.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 48 as though fully set forth herein.

65.     This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods using marks which are virtually identical, both visually and phonetically, to the Scarlxrd Mark in violation of Florida's common law of unfair competition.

66.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing counterfeits and infringements of the Scarlxrd Mark. Defendants are also using counterfeits and infringements of the Scarlxrd Mark to unfairly compete with Plaintiff for (i) space in search engine results across an array of search terms and/or (ii) visibility on the World Wide Web.

67.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Scarlxrd Mark.

68.     Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

69.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 48 as though fully set forth herein.

70.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing the Scarlxrd Mark.  Plaintiff is the owner of all common law rights in and to the Scarlxrd Mark.

71.     Specifically, Defendants, upon information and belief, are promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the Scarlxrd Mark.

72.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the Scarlxrd Mark.

73.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Scarlxrd Mark; from using the Scarlxrd Mark, or any mark or design

similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any counterfeit, copy, or colorable imitation of the Scarlxrd Mark in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's Scarlxrd Mark; and from otherwise unfairly competing with Plaintiff.

B. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to the Seller IDs, and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Scarlxrd Mark.

C. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, any Internet marketplace website

operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective Seller ID.

D.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court permanently remove any and all listings and associated images of goods bearing counterfeits and/or infringements of the Scarlxrd Mark via the e-commerce stores operating under the Seller IDs, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of the Scarlxrd Mark associated with and/or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Scarlxrd Mark.

E.      Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

F.      Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and

including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other alias seller identification or e-commerce store names, domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

G.     Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

H.     Entry of an order requiring Defendants to pay prejudgment interest according to law.

I.     Entry of an order for such other and further relief as the Court may deem proper and just.

Date:   March 8, 2021                    Respectfully submitted by,

THE BRICKELL IP GROUP, PLLC
1101 Brickell Avenue
South Tower, Suite 800
Miami FL, 33131
Tel: 305-728-8831
Fax: 305-428-2450

By:     s/ Richard Guerra
        Richard Guerra
        Fla. Bar No. 689521
        Email: rguerra@brickellip.com
        Rafael Perez-Pineiro
        Fla. Bar No. 543101
        Email: rperez@brickellip.com
        Nicole Fundora
        Fla. Bar No. 1010231
        Email: nfundora@brickellip.com
        Counsel for Plaintiff