UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20916-BLOOM/Otazo-Reyes

MARIUS LISTHROP, *a/k/a SCARLXRD*,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

**SEALED ORDER GRANTING *EX PARTE* APPLICATION FOR ENTRY OF
TEMPORARY RESTRAINING ORDER AND SETTING HEARING**

**THIS CAUSE** is before the Court upon Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, ECF No. [5] ("Motion"). Plaintiff Marius Listhrop ("Plaintiff") moves, *ex parte*, for entry of a temporary restraining order against the Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" (collectively, "Defendants"), and an order restraining the financial accounts used by Defendants pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a). The Court has carefully reviewed the Motion, the record in this case, and the applicable law, and is otherwise fully advised. For the reasons discussed below, Plaintiff's Motion is granted.

**I.    BACKGROUND**

Plaintiff is the owner of the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Scarlxrd Mark"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| SCARLXRD | 5,712,275 | 04/02/2019 | IC 009: Sound recordings featuring music; musical recordings; video recordings featuring music, and musical performances; tapes, namely, audio tapes featuring music; cassettes, namely, audio cassettes featuring music; CDs, namely, pre-recorded CDs featuring music; compact discs, namely, pre-recorded compact discs featuring music; films in the nature of motion picture films about music and musical bands; video cassettes, namely, prerecorded video cassettes featuring music; video recorders; CD ROMS, namely, prerecorded CD ROMS featuring music; video game software; computer game software; video cameras; cameras; spectacles, spectacle cases, sunglasses; mouse pads; screen savers in the nature of computer screen saver software; downloadable publications, namely, magazines in the field of music in electronic form, typically supplied on-line from databases or from facilities provided on the Internet; DVDs, namely, pre-recorded DVDs featuring music; headphones; stereo headphones; audiospeakers; downloadable digital music files; digital music downloadable from the Internet; downloadable music files; musical video recordings; downloadable musical sound recordings; musical recordings on compact discs; digital music downloadable in MP3 files provided from MP3 internet web sites; streamable sound recordings featuring music; streamable, downloadable videos featuring music and musical performances and |

| | | | |
|---|---|---|---|
| | | | downloadable electronic publication, namely, magazine featuring information about music and the music industry; computer application software for mobile phones, portable media players, handheld computers, namely, software for streaming or playing music; downloadable music sound recordings; downloadable video recordings featuring music and musical performances; software for displaying emoticons; downloadable telephone ring tones for mobile phones; mobile phone covers and cases; decorative magnets; fridge magnets<br><br>IC 014: Jewelry; watches; costume jewelry; brooches; cufflinks; tie pins; tie clips; earrings; key rings; pendants; horological and chronometric instruments including watches and clocks; decorative key fobs; lapel pins; rings; cuff links; bracelets; bracelets made of leather; bracelets made of metal; bracelets of precious metal; cuff links made of precious metals with semi-precious stones; bracelets made of precious metals with semi-precious stones; bracelets with semi-precious stones; bracelets with metal; jewelry chains; necklaces; jewelry rolls for travel<br><br>IC 016: Printed matter, namely, paper signs, books, magazines, newsletters, informational cards and brochures in the field of music, magazines in the field of music, coffee table books in the field of music; photographs, pictures, prints; posters; greeting cards; postcards; notepads; address books; scrapbooks; folders; calendars; photograph albums; diaries; stamp |

| | | | |
|---|---|---|---|
| | | | albums; stickers; car stickers; decalcomanias; stationery; pens; pencils; erasers; pencil sharpeners; pencil cases; drawing and drafting rulers; boxes for pens; book markers; gift bags; envelopes song books; printed sheet music; check book holders; book marks; paper bags<br><br>IC 018: Luggage; suitcases; luggage tags; overnight bags; weekend bags; suit bags; tote bags; briefcases; canvas shopping bags; trunks; travel cases; backpacks; baby carriers worn on the body; handbags; purses; wallets; sports bags; gym bags; leather bags; beach bags; casual bags in the nature of weekend bags, travel bags, clutch bags; cosmetic bags sold empty; make up bags sold empty; hip bags; drawstring pouches; rucksacks; satchels; school bags; shoe bags for travel; shoulder bags; sling bags; toiletry bags sold empty; travelling bags; bumbags; music cases; beauty cases sold empty; carriers for suits, for shirts and for dresses; tie cases; credit card cases and holders; business card cases; umbrellas; umbrella covers; parasols and walking sticks; whips; harness and saddlery; toweling bags; haversacks; bags for campers in the nature of all-purpose carrying bags; furskins; collars for animals; covers for animals; boxes of leather or leather board; attaché cases; canes; leather shoulder bags; valises; vanity cases sold empty; portfolios; key bags<br><br>IC 025: Clothing, namely, shirts, T-shirts, hoodies, sweatshirts, trousers, jogging suits, jeans, shorts, sports shorts, swimwear, beachwear, |

| | | | |
|---|---|---|---|
| | | | bikinis, swimming costumes, underwear, lingerie, boxer shorts, teddies being underclothing, slips being underclothing, camisoles, chemises, negligees, sleepwear, robes, pajamas, pajama sets, tracksuits, articles of outerwear, namely, coats, hats, gloves, jackets, jumpers and cardigans, pullovers, twin sets, knitwear, namely, tops and bottoms, leggings, neckties, waistcoats; Clothing, namely, headbands and wristbands as clothing, skirts, wraps as clothing, jerseys, blouses, dresses, sweatshirts, stockings, ties as clothing, shawls, blazers, overalls, halter tops, tank tops, crop tops, dresses, blazers, blouses, slacks, suits, vests, socks and hosiery, stockings, aprons, footwear, namely, boots, shoes, slippers, sandals, trainers in the nature of training shoes, booties, workout shoes and running shoes, beach shoes, soles for footwear; headwear, namely, headbands, hats, caps, berets, earmuffs, top hats, visors, baseball caps, beanies; swimwear; waterproof clothing, namely, tops, bottoms, and waterproof footwear and headwear; leather belts<br><br>IC 028: Games and playthings, namely, plush toys; playing cards; decorations for Christmas trees; children's toy bicycles; arcade games; balls for games; bath toys; beach balls; bean bags; board games; cuddly toys, namely, stuffed dolls and animals; soft toys in the nature of soft sculpture toys; stuffed toys; puppets; plush toys, jigsaw puzzles; manipulative puzzles; card games; computer games in the nature of battery-powered computer |

| | | | |
|---|---|---|---|
| | | | game with LCD screen; games adapted for use with television receivers<br><br>IC 041: Entertainment services in the nature of live musical group; sound recording and video entertainment services, namely, musical compositions for others and production of sound and music video recordings; concert and musical performances, namely, live music concerts; television and radio entertainment services, namely, ongoing television programs in the field of music and radio programs featuring performances by a musicians; entertainment services, namely, entertainment in the nature of live stage performances in the nature of concerts in the field of music by an individual and cabarets; production of music video and sound recordings; presentation, production and performance of live musical shows, live concerts, ongoing radio and television programs in the field of music, and multimedia entertainment services in the nature of production and post-production services in the fields of music, video, and films; recording, film, video and television studio services; audio, film, video and television recording services; music publishing; sound recording studios, production and distribution of films and videos in the field of music; publication of books, magazines and other texts; providing on-line music, not downloadable; on-line prerecorded digital music not downloadable provided from mp3 web sites on the internet; entertainment services, namely, providing non-downloadable |

| | | | prerecorded music, information in the field of music, and commentary and articles about music, all on-line via a global computer network |
|---|---|---|---|

*See* Declaration of Dan Jenkins in Support of Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Jenkins Decl.") at ¶ 4-5. The Scarlxrd Mark is used in connection with the design, marketing, and distribution of high-quality goods in the categories identified above. *See id.*

Defendants, through the various Internet based e-commerce stores operating under the seller identities identified on Schedule "A" to the Complaint (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what the Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Scarlxrd Mark. *See* Jenkins Decl. at ¶¶ 15-18; Declaration of Richard Guerra in Support of Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Guerra Decl.") at ¶¶ 4-5.

Although each of the Defendants may not copy and infringe the Scarlxrd Mark for each category of goods protected, Plaintiff has submitted sufficient evidence showing each of the Defendants has infringed the Scarlxrd Mark. *See* Guerra Decl. at ¶ 4, Schedule C. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Scarlxrd Mark. *See* Jenkins Decl. at ¶ 15.

Plaintiff investigated the promotion and sale of counterfeit and infringing versions of Plaintiff's branded and protected products by Defendants. *See* Jenkins Decl. at ¶¶ 15-18. Plaintiff accessed each of the e-commerce stores operating under Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeits of

the Scarlxrd Marks at issue in this action, and requested each product to be shipped to an address in the Southern District of Florida. *See id.*; *see also* Guerra Decl. at ¶ 5. Plaintiff conducted a review and visually inspected the Scarlxrd branded items for which orders were initiated by Plaintiff's third-party investigator via the Seller IDs and determined the products were nongenuine, unauthorized versions of Plaintiff's products. *See* Jenkins Decl. at ¶¶ 17-18.

## II. LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

## III. CONCLUSIONS OF LAW

The declarations Plaintiff submitted in support of its Motion support the following conclusions of law:

8

      A.      Plaintiff has a strong probability of proving at trial that (1) consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Scarlxrd Mark, and that (2) the products Defendants are selling and promoting for sale are copies of Plaintiff's products which bear copies of the Scarlxrd Mark.

      B.      Because of the infringement of the Scarlxrd Mark, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in Plaintiff's Complaint, its Motion, and the Motion's accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted:

      1.      Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of Plaintiff's rights;

      2.      There is good cause to believe that more counterfeit and infringing products bearing Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for his genuine products and an unnatural erosion of the legitimate marketplace in which he operates; and

      3.      There is good cause to believe that, if Plaintiff proceeds on notice to Defendants of this Application for Temporary Restraining Order, Defendants can easily and quickly change the ownership or modify domain registration and e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification

names, and transfer assets and ownership of Seller IDs, thereby thwarting Plaintiff's ability to obtain meaningful relief.

C.  The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

D.  The public interest favors issuance of the temporary restraining order to protect Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

E.  Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of the Scarlxrd Mark. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F.  Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.  In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to

believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Upon review of Plaintiff's Complaint, its Motion, and all supporting evidentiary submissions, the Court **ORDERS AND ADJUDGES** that Plaintiff's *Ex Parte* Application for Temporary Restraining Order, **ECF No. [5]**, is **GRANTED** as follows:

(1) Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are temporarily restrained as follows:

a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Scarlxrd Mark, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff;

b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the Scarlxrd Mark, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Scarlxrd Mark, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants; and

c. From using any reproduction, counterfeit, copy, or colorable imitation of the Scarlxrd Mark in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants.

(2) Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of the Scarlxrd Mark, or confusingly similar trademarks, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

(3) Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

(4) Upon receipt of notice of this Order, the Defendants and any third-party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the "Third-Party Providers"), shall within five (5) business days after receipt of notice of this Order,

a. Restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for Defendants' benefit or to be transferred into Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third-Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

          b.        Provide Plaintiff expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs identified on Schedule "A" hereto, as well as any other accounts of the same customer(s); (ii) the identity and location of Defendants identified in Schedule "A," including all known contact information including any and all known aliases and associated e-mail addresses; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related.

    (5)        Any Defendant or Third-Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

    (6)        The Clerk of the Court is directed to issue a single original summons in the name of "Shop911414187 and all other Defendants identified in Schedule 'A' of the Complaint" that shall apply to all Defendants. The combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

    (7)        This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the Scarlxrd Mark at issue in this action and/or unfairly competing with Plaintiff.

    (8)        This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated by the parties.

(9) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

(10) After Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, Plaintiff shall serve copies of the Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs or by providing a copy of this Order by email to the marketplace platforms for each of the Seller IDs so that the registrar, or marketplace platform, in turn, notifies each of the Defendants of the Order, or by other means reasonably calculated to give notice which is permitted by the Court. In addition, Plaintiff shall post copies of the Complaint, the Motion, and this Order, as well as all other documents filed in this action on the website located at https://www.dropbox.com/sh/oqmo4hl3mab5ekn/AABBJVz0wDgX6ELQVH7sPFL2a?dl=0 and shall provide the address to the website to Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof.  Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at https://www.dropbox.com/sh/oqmo4hl3mab5ekn/AABBJVz0wDgX6ELQVH7sPFL2a?dl=0, or by other means reasonably calculated to give notice which is permitted by the Court

Case No. 21-cv-20916-BLOOM/Otazo-Reyes

(11) **A Zoom videoconference hearing is set before this Court on March 24, 2021, at 9:30 a.m.** The parties may appear remotely on the date and time set forth above, at which time Defendants or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction. **The Zoom hyperlink is: https://www.zoomgov.com/j/1619514366?pwd=Zk1kam9MY0pleC9Id2QzVjNtTnJOZz09. Alternatively, the Zoom Meeting ID is: 161 951 4366, and the Passcode is 429727.**

(12) **Any response or opposition** to Plaintiff's Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel forty-eight (48) hours prior to the hearing set **March 24, 2021 at 9:30 a.m.**, and filed with the Court, along with Proof of Service. Plaintiff shall file any **Reply Memorandum** twenty-four (24) hours prior to the hearing set for **March 24, 2021 at 9:30 a.m.** The above dates may be revised upon stipulation by all parties and approval of this Court. **Defendants are on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), The All Writs Act, 28 U.S.C. § 1651(a), Federal Rule of Civil Procedure 65, and this Court's inherent authority.**

(13) The Clerk shall file this Order under seal until further order of the Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 10, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record