UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20916-BLOOM/Otazo-Reyes

MARIUS LISTHROP, *a/k/a SCARLXRD*,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court on upon Plaintiff's Motion for Entry of Preliminary Injunction, ECF No. [5] ("Motion"). Plaintiff, MARIUS LISTHROP a/k/a SCARLXRD ("Plaintiff" or "Listhrop") seeks entry of a preliminary injunction against the Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Revised Schedule "A" (collectively "Defendants"), and an order restraining the financial accounts used by Defendants pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a).

The Court convened a hearing on April 19, 2021, and only counsel for Plaintiff was present and available to present evidence supporting the Motion. Because the Plaintiff has satisfied the requirement for the issuance of a preliminary injunction, the Plaintiff's Motion for Preliminary Injunction, ECF No. [5], is granted as to all Defendants.

**I.      FACTUAL BACKGROUND[1]**

Plaintiff is the owner of the federally registered trademark identified in Schedule B (the "Scarlxrd Mark") attached to the Declaration of Dan Jenkins ("Jenkins Decl."). *See also* Pl.'s Compl. at Ex. No. 1 (ECF No. 1-1). The Scarlxrd Mark is used in connection with the design, marketing, and distribution of high-quality goods in at least the categories identified in the Scarlxrd Mark. Jenkins Decl. at ¶ 6. The Scarlxrd Mark is a symbol of Plaintiff's quality, reputation, and goodwill and the Scarlxrd Mark has never been abandoned. *Id*. at ¶¶ 13 & 14. Moreover, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting his trademark. *Id.* at ¶¶ 8 & 19.

The Defendants, through the various Internet based e-commerce stores operating under the seller identities identified on Revised Schedule "A" to the Complaint (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what the Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Scarlxrd Mark. *See* Jenkins Decl. at ¶ 15; Declaration of Richard Guerra in Support of Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Guerra Decl.") at ¶ 4.

Although each of the Defendants may not copy and infringe each category of goods protected under the Scarlxrd Mark, the Plaintiff has submitted sufficient evidence showing that each of the Defendants has infringed the Scarlxrd Mark. *See* Guerra Decl. at ¶ 4, Schedule C. The Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make

---

[1] The factual background is taken from the Plaintiff's Complaint, Motion, and supporting Declarations submitted by the Plaintiff.

counterfeits, reproductions, or colorable imitations of the Scarlxrd Mark. *See* Jenkins Decl. at ¶ 15.

The Plaintiff investigated the promotion and sale of counterfeit and infringing versions of the Plaintiff's branded and protected products by the Defendants. *See* Jenkins Decl. at ¶¶ 16-18; Guerra Decl. at ¶ 5. Plaintiff accessed each of the e-commerce stores operating under the Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeits of the Scarlxrd Mark at issue in this action, and requested each product to be shipped to an address in the Southern District of Florida. *See* Jenkins Decl. at ¶ 17. The Plaintiff conducted a review and visually inspected the Scarlxrd branded items for which orders were initiated by Plaintiff's third party investigator via the Seller IDs and determined the products were nongenuine, unauthorized versions of the Plaintiff's products. *See id* at ¶ 18.

## II. LEGAL STANDARD

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

## III. CONCLUSIONS OF LAW

The declarations the Plaintiff submitted in support of its Motion for Preliminary Injunction support the following conclusions of law:

Case No. 21-cv-20916-BLOOM/Otazo-Reyes

      A.      The Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Scarlxrd Mark.

      B.      Because of the infringement of the Scarlxrd Mark, the Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in the Plaintiff's Complaint, Motion, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiff and to consumers in view of the following considerations:

      1.      The Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of the Plaintiff's rights; and

      2.      There is good cause to believe that more infringing products bearing the Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that the Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates.

      C.      The balance of potential harm to the Defendants in restraining their trade in infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to the Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

      D.      The public interest favors issuance of a preliminary injunction to protect the Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and

development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

E. Under 15 U.S.C. § 1117(a), the Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and sales of goods bearing infringements of the Scarlxrd Mark. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G. In light of the inherently deceptive nature of the infringing business, and the likelihood that the Defendants have violated federal trademark laws, the Plaintiff has good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Upon review of the Plaintiff's Complaint, Motion, and supporting evidentiary submissions, it is **ORDERED AND ADJUDGED** that the Plaintiff's Motion for Preliminary Injunction, **ECF No. [5]**, is **GRANTED**, under the terms set forth below:

(1) Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are restrained and enjoined until further order from this Court as follows:

    a.  From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Scarlxrd Mark, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff; and

    b.  From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Scarlxrd Mark, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Scarlxrd Mark, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants.

  (2)  Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of the Scarlxrd Mark, confusingly similar trademarks, on or in connection with all Internet based e-commerce stores and websites owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

  (3)  Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

  (4)  Upon receipt of notice of this Order, the Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy,

and/or Taobao, and their related companies and affiliates (collectively, the "Third Party Providers"), shall after receipt of notice of this Order, restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

(5) Any Defendant or Third Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(6) This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the Scarlxrd Mark at issue in this action and/or unfairly competing with Plaintiff.

(7) This Order shall remain in effect during the pendency of this action, or until such further dates as set by the Court or stipulated to by the parties.

(8) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), the Plaintiff shall maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which the Defendants may be entitled for a

wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.

**DONE AND ORDERED** in Chambers at Miami, Florida on April 19, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record