UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20916-BLOOM/Otazo-Reyes

MARIUS LISTHROP, *a/k/a SCARLXRD*,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.

_____/

## ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Marius Listhrop's ("Plaintiff") Motion for Entry of Final Default Judgment, ECF No. [59] ("Motion"), filed on June 14, 2021. A Clerk's Default, ECF No. [53], was entered against Defendants on June 2, 2021, as Defendants failed to appear, answer, or otherwise plead to the Complaint, ECF No. [1], despite having been served. *See* Proof of Service ECF No. [41]. The Court has carefully considered the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the following reasons, Plaintiff's Motion is granted.

## I.      INTRODUCTION

Plaintiff sued Defendants for trademark counterfeiting and infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and common law unfair competition; and common law trademark infringement.

The Complaint alleges that Defendants are advertising, using, selling, promoting, and distributing, counterfeits and confusingly similar imitations of Plaintiff's registered trademarks within the Southern District of Florida by operating the Defendants' Internet based e-commerce stores operating under each of the Seller IDs identified on Schedule "A" attached to Plaintiff's Motion for Entry of Final Default Judgment (the "Seller IDs").

Plaintiff further asserts that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff because Defendants have 1) deprived Plaintiff of his right to determine the manner in which his trademarks are presented to consumers; (2) deceived the public as to Plaintiff's sponsorship of and/or association with Defendants' counterfeit products and the websites on online storefronts through which such products are sold, offered for sale, marketed, advertised, and distributed; (3) wrongfully traded and capitalized on Plaintiff's reputation and goodwill and the commercial value of Plaintiff's trademarks; and (4) wrongfully damaged Plaintiff's ability to market his branded products and educate consumers about his brand via the Internet in a free and fair marketplace.

In his Motion, Plaintiff seeks the entry of default final judgment against Defendants[1] in an action alleging trademark counterfeiting and infringement, false designation of origin, common-law unfair competition, and common law trademark infringement.  Plaintiff further requests that the Court (1) enjoin Defendants unlawful use of Plaintiff's trademarks; (2) award Plaintiff damages; and (3) instruct any third party financial institutions in possession of any funds restrained or held on behalf of Defendants to transfer these funds to Plaintiff in partial satisfaction of the award of damages.

---

[1] Defendants are the Individuals, Partnerships, or Unincorporated Associations identified on Schedule "A" of Plaintiff's Motion, and Schedule "A" of this Order.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Granting a motion for default judgment is within the trial court's discretion. *See Nishimatsu*, 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.; see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default … ."). Upon a review of Plaintiff's submissions, it appears there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiff.

## II.    FACTUAL BACKGROUND[2]

Plaintiff is the registered owner of the following trademarks registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Scarlxrd Mark"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| SCARLXRD | 5,712,275 | 04/02/2019 | IC 009: Sound recordings featuring music; musical recordings; video recordings featuring music, and musical performances; tapes, namely, audio tapes featuring music; cassettes, namely, audio cassettes featuring music; CDs, namely, pre-recorded CDs featuring music; compact discs, namely, pre-recorded compact discs featuring music; films |

---

[2] The factual background is taken from Plaintiff's Complaint, ECF No. [1], Plaintiff's Motion for Entry of Final Default Judgment and supporting evidentiary submissions.

| | | | in the nature of motion picture films about music and musical bands; video cassettes, namely, prerecorded video cassettes featuring music; video recorders; CD ROMS, namely, prerecorded CD ROMS featuring music; video game software; computer game software; video cameras; cameras; spectacles, spectacle cases, sunglasses; mouse pads; screen savers in the nature of computer screen saver software; downloadable publications, namely, magazines in the field of music in electronic form, typically supplied on-line from databases or from facilities provided on the Internet; DVDs, namely, pre-recorded DVDs featuring music; headphones; stereo headphones; audiospeakers; downloadable digital music files; digital music downloadable from the Internet; downloadable music files; musical video recordings; downloadable musical sound recordings; musical recordings on compact discs; digital music downloadable in MP3 files provided from MP3 internet web sites; streamable sound recordings featuring music; streamable, downloadable videos featuring music and musical performances and downloadable electronic publication, namely, magazine featuring information about music and the music industry; computer application software for mobile phones, portable media players, handheld computers, namely, software for streaming or playing music; downloadable music sound recordings; downloadable video recordings featuring music and musical performances; software for displaying emoticons; downloadable |
|---|---|---|---|

|  |  |  | telephone ring tones for mobile phones; mobile phone covers and cases; decorative magnets; fridge magnets<br><br>IC 014: Jewelry; watches; costume jewelry; brooches; cufflinks; tie pins; tie clips; earrings; key rings; pendants; horological and chronometric instruments including watches and clocks; decorative key fobs; lapel pins; rings; cuff links; bracelets; bracelets made of leather; bracelets made of metal; bracelets of precious metal; cuff links made of precious metals with semi-precious stones; bracelets made of precious metals with semi-precious stones; bracelets with semi-precious stones; bracelets with metal; jewelry chains; necklaces; jewelry rolls for travel<br><br>IC 016: Printed matter, namely, paper signs, books, magazines, newsletters, informational cards and brochures in the field of music, magazines in the field of music, coffee table books in the field of music; photographs, pictures, prints; posters; greeting cards; postcards; notepads; address books; scrapbooks; folders; calendars; photograph albums; diaries; stamp albums; stickers; car stickers; decalcomanias; stationery; pens; pencils; erasers; pencil sharpeners; pencil cases; drawing and drafting rulers; boxes for pens; book markers; gift bags; envelopes song books; printed sheet music; check book holders; book marks; paper bags<br><br>IC 018: Luggage; suitcases; luggage tags; overnight bags; weekend bags; suit bags; tote bags; briefcases; |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | canvas shopping bags; trunks; travel cases; backpacks; baby carriers worn on the body; handbags; purses; wallets; sports bags; gym bags; leather bags; beach bags; casual bags in the nature of weekend bags, travel bags, clutch bags; cosmetic bags sold empty; make up bags sold empty; hip bags; drawstring pouches; rucksacks; satchels; school bags; shoe bags for travel; shoulder bags; sling bags; toiletry bags sold empty; travelling bags; bumbags; music cases; beauty cases sold empty; carriers for suits, for shirts and for dresses; tie cases; credit card cases and holders; business card cases; umbrellas; umbrella covers; parasols and walking sticks; whips; harness and saddlery; toweling bags; haversacks; bags for campers in the nature of all-purpose carrying bags; furskins; collars for animals; covers for animals; boxes of leather or leather board; attaché cases; canes; leather shoulder bags; valises; vanity cases sold empty; portfolios; key bags<br><br>IC 025: Clothing, namely, shirts, T-shirts, hoodies, sweatshirts, trousers, jogging suits, jeans, shorts, sports shorts, swimwear, beachwear, bikinis, swimming costumes, underwear, lingerie, boxer shorts, teddies being underclothing, slips being underclothing, camisoles, chemises, negligees, sleepwear, robes, pajamas, pajama sets, tracksuits, articles of outerwear, namely, coats, hats, gloves, jackets, jumpers and cardigans, pullovers, twin sets, knitwear, namely, tops and bottoms, leggings, neckties, waistcoats; Clothing, namely, headbands and wristbands as |

| | | | clothing, skirts, wraps as clothing, jerseys, blouses, dresses, sweatshirts, stockings, ties as clothing, shawls, blazers, overalls, halter tops, tank tops, crop tops, dresses, blazers, blouses, slacks, suits, vests, socks and hosiery, stockings, aprons, footwear, namely, boots, shoes, slippers, sandals, trainers in the nature of training shoes, booties, workout shoes and running shoes, beach shoes, soles for footwear; headwear, namely, headbands, hats, caps, berets, earmuffs, top hats, visors, baseball caps, beanies; swimwear; waterproof clothing, namely, tops, bottoms, and waterproof footwear and headwear; leather belts

IC 028: Games and playthings, namely, plush toys; playing cards; decorations for Christmas trees; children's toy bicycles; arcade games; balls for games; bath toys; beach balls; bean bags; board games; cuddly toys, namely, stuffed dolls and animals; soft toys in the nature of soft sculpture toys; stuffed toys; puppets; plush toys, jigsaw puzzles; manipulative puzzles; card games; computer games in the nature of battery-powered computer game with LCD screen; games adapted for use with television receivers

IC 041: Entertainment services in the nature of live musical group; sound recording and video entertainment services, namely, musical compositions for others and production of sound and music video recordings; concert and musical performances, namely, live music concerts; television and radio |
|---|---|---|---|

| | | | entertainment services, namely, ongoing television programs in the field of music and radio programs featuring performances by a musicians; entertainment services, namely, entertainment in the nature of live stage performances in the nature of concerts in the field of music by an individual and cabarets; production of music video and sound recordings; presentation, production and performance of live musical shows, live concerts, ongoing radio and television programs in the field of music, and multimedia entertainment services in the nature of production and post-production services in the fields of music, video, and films; recording, film, video and television studio services; audio, film, video and television recording services; music publishing; sound recording studios, production and distribution of films and videos in the field of music; publication of books, magazines and other texts; providing on-line music, not downloadable; on-line prerecorded digital music not downloadable provided from mp3 web sites on the internet; entertainment services, namely, providing non-downloadable prerecorded music, information in the field of music, and commentary and articles about music, all on-line via a global computer network |
|---|---|---|---|

*See* Complaint, ECF No. [1].  The Scarlxrd Mark is used in connection with the design, marketing, and distribution of high-quality goods in at least the categories identified above. *See* Declaration of Dan Jenkins, ECF No. [5-1] at 5. Plaintiff has exclusive rights in and to the Scarlxrd Mark. *Id.*

Although each Defendant may not copy and infringe each of Plaintiff's trademarks for each

category of goods protected, Plaintiff has submitted sufficient evidence showing each Defendant has infringed the Scarlxrd Mark for at least at least one category of goods.  *See* Declaration of Dan Jenkins, ECF No. [5-1] at 15-18, and Schedule "C" to Declaration of Richard Guerra[3].  Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the of the Scarlxrd Mark. *See* Declaration of Dan Jenkins, ECF No. [5-1] at 15-18.

As part of his ongoing investigation regarding the sale of counterfeit and infringing products, Plaintiff hired a third party investigatory to access Defendants' Internet based e-commerce stores operating under each of the Seller IDs.  The third party investigator initiated orders from each Seller IDs for the purchase of various products, all bearing, or suspected of bearing, counterfeits of the Scarlxrd Mark, and requested each product to be shipped to an address in the Southern District of Florida.  Accordingly, Defendants' Goods are being promoted, advertised, offered for sale, and sold by Defendants within this district and throughout the United States. *See* Declaration of Richard Guerra ECF No. [5-2] at 5. A representative for Plaintiff personally analyzed the Scarlxrd branded items wherein orders were initiated via each of the Seller IDs by reviewing the e-commerce stores operating under each of the Seller IDs, or the detailed web page captures and images of the items bearing the Scarlxrd Mark, and concluded the products were non-genuine, unauthorized Scarlxrd products.  *See* Declaration of Dan Jenkins, ECF No. [5-1] at 18.

---

[3] Evidence of each Defendant's infringement was attached as Exhibit 1 to the Declaration of Richard Guerra in Support of Plaintiff's Motion for Entry of Final Default Judgment.  Due to the size restriction for filing with the CM/ECF, the exhibit to the declaration was filed separately, in parts, in order to meet the maximum allowable size constraints on June 14, 2021.

### III.   ANALYSIS

#### A.   Claims

##### 1.   Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I)

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

##### 2.   False Designation of Origin Pursuant to § 43(A) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II)

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' services by Plaintiff. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be

deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

### 3. Common Law Unfair Competition and Trademark Infringement (Counts III and IV)

Whether a defendant's use of a Plaintiff's trademarks created a likelihood of confusion between Plaintiff's and the defendant's services or goods is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983.)"); *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217-18 (S.D. Fla. 2004).

### B. Liability

The well-pled factual allegations of Plaintiff's Complaint properly allege the elements for each of the claims described above. *See* ECF No. [1]. Moreover, the factual allegations in Plaintiff's Complaint have been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C.      Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiffs have carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale

of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiff's Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. [1]. Further, the Complaint alleges, and the unauthorized Masha and The Bear products sold, offered for sale, marketed, advertised, and distributed by Defendants are nearly identical to Plaintiff's genuine Masha and The Bear products and that consumers viewing Defendants' counterfeit products would actually confuse them for Plaintiff's genuine products. *See id.* "The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff." *See* ECF No. [1], at 36.

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs because Plaintiff cannot control the quality of what appears to be his Scarlxrd products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting and infringing actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and his inability to control his reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which are illegal acts.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' counterfeit products. *See Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants'

infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.,* 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defendants have created an Internet-based infringement scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities.

**D.      Statutory Damages for the Use of Counterfeit Marks**

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of products, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good or service. 15 U.S.C. § 1117(c)(1).  In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or service. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff has elected to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion in determining the amount of statutory damages. *See PetMed Express, Inc.,* 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.,* 902 F.2d 829, 852 (11th Cir. 1990)). "An award of statutory damages is appropriate despite a

plaintiff's inability to prove actual damages caused by a defendant's infringement." *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 WL 1652044, at *22-23 (S.D. Fla. Apr. 23, 2014) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent." (*citing Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006))); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Complaint, which are taken as true, clearly establish Defendants

intentionally copied the Scarlxrd Mark for the purpose of deriving the benefit of Plaintiff's world-famous reputation. As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of service as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant sold, promoted, distributed, advertised, and/or offered for sale products bearing marks which were in fact counterfeits of at least one of the Scarlxrd Mark. *See* ECF No. [1].  Based on the above considerations, Plaintiff suggests the Court award statutory damages of $100,000.00 against each Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c).  The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### E. Damages for False Designation of Origin

Plaintiff's Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II). *See* 15 U.S.C. § 1125(a). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II is limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### F. Damages for Common Law Unfair Competition and Trademark Infringement

Plaintiff's Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count III) and trademark infringement (Count IV). Judgment on Count III and Count IV are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

Case No. 21-cv-20916-BLOOM/Otazo-Reyes

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion, **ECF No. [59]**, is **GRANTED** against those Defendants listed in the attached Schedule "A." Final Default Judgment will be entered by separate order pursuant to Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 15, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record